JOHN M. PARKER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11302.  Promulgated May 9, 1928.

*John D. Miller, Esq.*, and *C. G. Robinson, C. P. A.*, for the petitioner.

*A. H. Fast, Esq.*, for the respondent.

### OPINION.

MORRIS: While there are a number of questions urged for consideration, the major one is set forth in the first allegation of error herein to the effect that the respondent erroneously held that the petitioner was not entitled to have its taxes computed and assessed under the provisions of section 303 of the Revenue Act of 1918.

Section 303 of the Revenue Act of 1918 provides:

That if part of the net income of a corporation is derived (1) from a trade or business (or a branch of a trade or business) in which the employment of capital is necessary, and (2) a part (constituting not less than 30 per centum of its total net income) is derived from a separate trade or business (or a distinctly separate branch of the trade or business) which if constituting the sole trade or business would bring it within the class of "personal service corporations", then (under regulations prescribed by the Commissioner with the approval of the Secretary) the tax upon the first part of such net income shall be separately computed (allowing in such computation only the same proportionate part of the credits authorized in sections 311 and 312), and the tax upon the second part shall be the same percentage thereof as the tax so computed upon the first part is of such first part. * * *

Thus it will be seen that in order for the petitioner to overcome the prima facie correctness of the respondent's determination, it must prove that the amount of *net* income from sources not involving the use of capital is not less than 30 per centum of the total *net* income, and, furthermore, that the branch of the business from which said income is derived is distinctly separate from that branch of the business in which the employment of capital is necessary; failure to establish either of these requirements must necessarily preclude the relief which it seeks.

At the hearing the petitioner's counsel devoted considerable time and attention to the organization of the petitioner, the various amendments to its charter, the increases in its capitalization, the stock ownership during the taxable year, and a classification of the various sources of income, but we fail to find anywhere in the record proof of a segregation of income (other than commissions) or of the expenses to the separate branches of business, so that the percentage of *net income* from these two sources may be determined. While the

petitioner has satisfactorily established a proper segregation of its commissions, that is not sufficient to comply with the statute, which provides that it shall derive not less than 30 per centum of its total *net income* from a separate trade or business or a distinctly separate branch of a trade or business.

The report of the revenue agent's examination was offered in evidence by the petitioner and was qualifiedly received. We can not accept the contents of that report except insofar as it may aid in determining the proven facts or to the extent that the contents have been admitted or adopted by the respondent. Let us see, however, what the petitioner's net income from the two sources is with the aid of the segregation of income and expenses, other than commissions, reported by the revenue agent.

The revenue agent, as we have shown in the findings of fact herein, found the total income to be $346,245.69, from which total expenses of $184,307.98 have been deducted, leaving a total net income subject to tax of $161,937.71. For the purpose of computing the petitioner's tax for the period in question under the provisions of section 303, *supra*, he has segregated the total income into " capitalistic " and " personal service," allocating $134,803.71 to the former and $211,-441.98 to the latter class. He has deducted from the so-called capitalistic income, total expenses of $76,111.60, and from the so-called personal service income, $108,196.38, leaving a net income of $58,-692.11 attributable to the capitalistic branch of the business, and $103,245.60 as attributable to the personal service branch of the business. So computing, he finds the percentage of income from capitalistic sources to be 36.24.

The respondent, as we have indicated, did not sustain the revenue agent insofar as the computation of the tax under section 303, *supra*, is concerned, however, the total net income as ultimately determined by the respondent of $161,937.71, exactly agrees with the amount found by the revenue agent.

The total amount of commissions earned by the petitioner for the year ended July 31, 1920, of $207,184.43 (which differs from the amount found by the revenue agent by five cents) was included in the class of personal service income by the revenue agent in his computation. At the hearing of this proceeding the testimony adduced by the petitioner's witnesses disclosed that $101,434.55 of that amount represented commissions derived from business upon which capital was necessary and that $105,749.88 was from business upon which no capital was required. The petitioner went no farther than to prove the gross commissions and what it regarded as a proper segregation thereof.

Reverting to the testimony of the petitioner's witness that of the $207,184.43, commissions earned during the year, $101,434.55 represents commissions from business upon which capital was necessary and that the balance of $105,749.88 was from business upon which no capital was necessary, and using the balance of the computations found in the revenue agent's report, we arrive at the following:

|  | Capitalistic | Personal service |
|---|---|---|
| Commissions (segregated according to testimony) | $101,434.55 | $105,749.88 |
| Other income (as segregated by revenue agent) | 134,803.71 | 4,257.50 |
| Total income | 236,238.26 | 110,007.38 |
| Total expenses (as segregated by revenue agent) | 76,111.60 | 108,196.38 |
| Total net income | 160,126.66 | 1,811.00 |

Therefore, even accepting the testimony as to the segregation of commissions and adopting the segregation of other income and expenses to be found in the revenue agent's report, we find, that of the total net income of $161,937.66, nearly all, or $160,126.66, represents income derived from purely capitalistic sources and only $1,811 from the personal service branch of the business.

We realize that in the segregation of expenses made by the revenue agent the $108,196.38 allocated to personal service applied also to the commissions earned of $101,434.55, which he classified as personal service, but in the earning of which we find from the testimony that the employment of capital was necessary. Obviously, therefore, the net income from personal service was greater than the $1,811 shown in the above table, but as no further allocation of the expenses was offered we are unable to say how much greater it should be. The petitioner, therefore, has failed to meet the first test of the statute.

The further limitation of section 303 is that the business from which the personal service income is derived must be a separate trade or business or a distinctly separate branch of the trade or business. Considering all the evidence on this phase of the case we are of the opinion that the petitioner does not meet this requirement of the statute. See *C. Trevor Dunham, Inc.*, 5 B. T. A. 344; *Wheeler, Kelly & Hagny Co.*, 11 B. T. A. 656. The respondent's determination with respect to the first point is accordingly approved.

With respect to the second allegation of error urged by the petitioner it seems only necessary to point out that while the petitioner executed an agreement consenting to the assessment of a deficiency on Form 870 on August 17, 1925, which appears to have been received in the office of the revenue agent on the day following, agreeing to the assessment of the deficiency as found by the revenue agent in his report dated July 23, 1925, it does not appear that the respondent

ever approved that agreement, which approval was made an express condition precedent to its validity. It is, therefore, not necessary for us to pass upon the force and effect of such an agreement when completed according to its terms.

The third allegation of error urged by the petitioner is that the respondent erred in reaching a different conclusion with respect to the fiscal year July 31, 1920, than was reached by his predecessor in office for preceding years. The mere fact that the respondent's predecessor in office heard and determined questions of fact presented to him as to former years and ruled that the petitioner was entitled to have its taxes computed and assessed under the provisions of section 303, *supra*, is not controlling upon the respondent where he considers that a different conclusion should be reached based upon the facts presented to him for the period under consideration. We are, therefore, of the opinion that the respondent was entirely justified in his action with respect to the fiscal year ended July 31, 1920. See *Dallas Brass & Copper Co.*, 3 B. T. A. 856; *Mather Paper Co.*, 3 B. T. A. 1; also *George A. Fink Co.*, 5 B. T. A. 76.

The fourth allegation of error herein is that the deficiency set forth in deficiency notice of December 18, 1925, out of which this proceeding arose, is barred by the statute of limitations, for the reason that the assessment of August 3, 1925, and the alleged contract of August 17, 1925, terminated all the rights and privileges conferred by the consent in writing entered into on July 22, 1925, which consent was not intended to grant, and did not grant, the right to reaudit returns and reassess additional taxes as often as the collector might see fit to do so.

This issue was not urged by the petitioner's counsel in his brief nor at the hearing. An examination of the consent entered into between the parties discloses no limitations whatsoever upon the collector or the respondent to assess taxes rightfully due at any time within the period of limitation as extended by said consent.

We know of no justification in law for holding that, notwithstanding the period of limitation has been extended by consent in writing between the parties, the period has expired because of an alleged former assessment (of which we have no proof other than the fact that the revenue agent made an examination and rendered his report), and an agreement as evidenced here, which, as we have shown in our discussion of the second allegation of error herein, was never finally consummated between the parties. We, therefore, hold that the period of limitation, within which assessment and collection of the tax may be made, has not expired.

Allegation of error 5 (a) herein is that the respondent committed error in reducing petitioner's invested capital by an amount of income and profits taxes for 1919.

Section 1207 of the Revenue Act of 1926 provides:

The computation of invested capital for any taxable year under the Revenue Act of 1917, the Revenue Act of 1918, and the Revenue Act of 1921, shall be considered as having been correctly made, so far as relating to the inclusion in invested capital for such year of income, war-profits, or excess-profits taxes for the preceding year, if made in accordance with the regulations in force in respect of such taxable year applicable to the relationship between invested capital of one year and taxes for the preceding year.

Since no proof was offered at the hearing of this proceeding that the adjustment complained of was not made in accordance with the regulations in force during the taxable period in question, we approve the findings of the respondent with respect thereto.

The allegation of error 5 (b) herein is set forth by the petitioner in the following language:

Commissioner erred in computation of the reduction of taxpayer's invested capital on account of dividend paid on October 7, 1919, said error on the part of the Commissioner was caused by an erroneous determination of the current year's earnings available for said dividend, said earnings being reduced by tentative tax in the sum of $43,673.74 resulting in a deduction of $33,521.17 from taxpayer's invested capital, whereas said reduction should be $26,989.80.

The respondent erred in reducing invested capital by subtracting from current earnings a tentative tax in determining the amount of such income available for dividends. See *L. S. Ayers & Co.*, 1 B. T. A. 1135, and numerous later decisions.

The petitioner alleges that the respondent erred in treating stock of the New Orleans Cotton Exchange, owned by it, and carried on its books at a value of $2,500, as an inadmissible asset in determining its invested capital. Section 325 of the Revenue Act of 1918 provides:

The term "inadmissible assets" means stocks, bonds, and other obligations (other than obligations of the United States), the dividends or interest from which is not included in computing net income, * * *

In *Securities Investing Fund, Inc.*, 1 B. T. A. 279, the Board said:

We are of the opinion that the words "the dividends or interest from which is not included in computing net income" identify a type or class of investment and they have no reference to *received* income.

It was testified that the stock of the New Orleans Cotton Exchange does not have any earning power. Although the charter, constitution, by-laws and rules of that exchange were introduced in evidence, not in reference to this particular point, however, we are unable to determine therefrom, in the absence of other evidence as to the operation of the exchange, whether its stock does or does not belong in that type or class of investment included in section 325 above quoted. The respondent's action in treating it as an inadmissible asset is, therefore, sustained. See also *The Collins Co.*, 3 B. T. A. 1213.

*Judgment will be entered under Rule 50.*